**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3295-WJM-SKC

DOWNTOWN LOFTS LIHTC LLLP, and
DOWNTOWN LOFTS PAB LLLP,

      Plaintiffs,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut
corporation,

      Defendant.

---

## ORDER ON EARLY CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

---

      This case is before the Court on: (1) Defendant Travelers Property Casualty

Company of America's Early Motion for Partial Summary Judgment ("Defendant's

Motion") (ECF No. 37), to which Plaintiffs Downtown Lofts LIHTC LLLP and Downtown

Lofts PAB LLLP (jointly, "Plaintiffs") filed a response in opposition (ECF No. 46), and

Defendant replied (ECF No. 49); and (2) Plaintiffs' Early Motion for Partial Summary

Judgment ("Plaintiffs' Motion") (ECF No. 38), to which Defendant responded (ECF No.

45), and Plaintiffs replied (ECF No. 50).  In addition, the parties filed Stipulated Facts

for Early Cross Motions for Summary Judgment (ECF No. 36), and Plaintiffs filed a

Notice of Supplemental Authority Re Early Cross-Motions for Partial Summary

Judgment (ECF No. 58).  For the following reasons, Defendant's Motion is granted, and

Plaintiffs' Motion is denied.

### I. STANDARD OF REVIEW

      Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

### A.    Stipulated Facts[1]

FCI Constructors, Inc. ("FCI") contracted with Colorado Coalition for the Homeless ("CCH") to serve as general contractor and construct a building for CCH in Denver, known as the Renaissance Downtown Lofts ("the Project"). (ECF No. 36 ¶ 2.) CCH assigned its interests in the Project to Plaintiffs before the loss that is the subject

---

[1] The following factual summary is taken from the Stipulated Facts for Early Cross Motions for Summary Judgment. (ECF Nos. 36, 36-1.) The Court recognizes that the parties dispute various material facts in their briefing on Defendant's Motion and Plaintiffs' Motion, but need not resolve those disputes here.

of this litigation.  (*Id.* ¶ 3.)  In connection with the Project, FCI purchased builders' risk insurance (the "Policy") (ECF No. 36-1) from Defendant.  (*Id.* ¶ 1.)  The Policy period was October 1, 2017 to October 1, 2018.  (ECF No. 36-1 at 3.)  The Policy included coverage for Covered Property up to the total project value reported to Defendant by FCI and a "Coverage Extension" for "Soft Costs" up to $1 million.  (ECF No. 36 ¶ 1.)

In or about November 2017, a covered loss caused water damage to the building at the Project. (*Id.* ¶ 6.)  FCI notified Defendant of the loss and submitted a claim to Defendant.  (*Id.* ¶ 7.)  Defendant adjusted and paid FCI's claim for damage to "Covered Property" in the amount of $3,079,519 and for "Soft Costs" in the amount of $238,897. (*Id.* ¶ 8.)

Plaintiffs presented claims to Defendant for their own Soft Costs, totaling $657,211.  (*Id.* ¶ 9.)  Plaintiffs allege the Policy covers their Soft Costs losses.  (*Id.* ¶ 10.)  Defendant disputes this claim.  (*Id.*)

The parties dispute whether Plaintiffs are insureds under the Policy.  (*Id.* ¶ 4.) The parties' early cross motions address the question of what Soft Costs coverage, if any, a party can recover if they qualify as an Additional Named Insured ("ANI") as defined by Section E.1 of the Policy.  (*Id.*)  For the purposes of the cross motions, Defendant does not dispute that Plaintiffs are ANIs under Section E.1 of the Policy.  (*Id.* ¶ 5.)

**B.    Policy Provisions**

The Policy provides:

### A.    COVERAGE

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.

1.      **Covered Property**

Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable, the value of which is included in the estimated "total project value" shown in the Declarations:

a.      **Permanent Works**

Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the Declarations during completion of such project or that will be used or expended in the completion of such project.

Completion of the project includes site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities.

b.      **Temporary Works**

Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

4

(ECF No. 36-1 at 22.)

Further, the Policy states that "Throughout this policy, the words 'you' and 'your'
refer to the Named Insured shown in the Declarations."  (*Id.*)  The Declarations identify
FCI and six other entities as Named Insureds.[2]  (*Id.* at 3, 9.)  Significantly here, Plaintiffs
are not listed as Named Insureds in the Declarations.  (*Id.*)

In a section titled "Additional Conditions," Section E.1 of the Policy provides for
certain coverage for ANIs:

> ### E.   ADDITIONAL CONDITIONS
>
> The following conditions apply in addition to the
> COMMERCIAL INLAND MARINE CONDITIONS and
> the COMMON POLICY CONDITIONS.
>
> #### 1.   Additional Named Insured
>
> The following persons or organizations are
> included as Additional Named Insureds when
> you have agreed in a written contract or written
> agreement, executed prior to loss, to name
> such persons or organizations as an Additional
> Named Insured, *but only to the extent of their
> financial interest in the Covered Property*:
>
> a.   Owners of Covered Property;
>
> b.   Mortgagees or loss payees;
>
> c.   Contractors, sub contractors and sub-
> sub contractors; and
>
> d.   Lessors or lessees.

_____

[2] The General Purpose Endorsement lists the Named Insureds: "Item 1. Named Insured
to Read: FCI Constructors, Inc.; Brem Partnership; Rivers Edge Properties, LLC; GJ Digs, LLC;
FCI Constructors New Mexico, LLC; FCI Constructors of Wyoming, LLC; and FRDIGS, LLC."
(ECF No. 36-1 at 9.)

(*Id.* at 33 (italics added, bold in original).)

Section A.4.d of the Policy, "Coverage Extensions," addresses Soft Costs and provides that "Each of the following Coverage Extensions applies unless *Not Covered* is indicated in the Declarations":

      **d.**    **Soft Costs**

> We will pay your "soft costs" during the "period of delay in completion".  Such "soft costs" must result from direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss which delays the completion of the applicable project described in the Declarations beyond the "planned completion date".

> The Soft Costs Limit of Insurance shown in the Declarations is the most we will pay in any one occurrence under this Coverage Extension.

(*Id.* at 23–24 (bold in original).)

Section F, "Definitions," defines "Soft Costs":

      **10.**    **"Soft Costs"** means your actual and necessary business costs in excess of your budgeted amount for the project consisting only of:

          **a.**    Advertising and promotional expenses.

          **b.**    Architect, engineer, designer and consultant fees.

          **c.**    Costs resulting from the renegotiation of your sales contract, leases, or construction loans.

          **d.**    General overhead and administrative expenses, other than legal, accounting and professional fees.

          **e.**    Insurance premiums.

6

  **f.**  Interest on money borrowed to finance construction.

  **g.**  Legal and accounting fees and other costs to renegotiate and prepare revised contracts and other documents.

     These expenses cannot be used for preparation of claims or to establish liability for loss.

  **h.**  Permit and Inspection Fees.

  **i.**  Realty taxes and realty assessments.

(*Id.* at 40 (bold in original).)  The Policy Declarations include a separate sublimit for Soft Costs coverage of $1 million.  (*Id.* at 15.)

## C. Procedural History

Plaintiffs filed this action in the District Court, City and County of Denver, Colorado on October 17, 2019.  (ECF No. 6.)  They brought three claims for relief: (1) breach of contract; (2) statutory delay/denial in violation of Colo. Rev. Stat. §§ 10-3-1115 & 1116; and (3) common law bad faith.

On November 21, 2019, Defendant removed the action under this Court's diversity jurisdiction.  (ECF No. 1 at 2.)  Defendant answered the complaint.  (ECF No. 16.)  On March 24, 2020, the parties filed cross-motions for early partial summary judgment (ECF Nos. 37, 38), which are ripe for review.

## III. ANALYSIS

## A. Principles of Insurance Policy Construction

In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law.  *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*

*of Colo.*, 67 P.3d 12, 20 (Colo. 2003) (en banc).  Under Colorado law, courts construe

insurance policies "using general principles of contract interpretation."  *Greystone*

*Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011).

Therefore, absent an ambiguity, a policy's language is construed according to its plain

meaning.  *Id*.  However, in recognition of the unique relationship between insurer and

insured, courts "construe ambiguous provisions against the insurer and in favor of

providing coverage to the insured."  *Id*. at 1284.

To determine whether a provision is ambiguous, "the instrument's language must

be examined and construed in harmony with the plain and generally accepted meaning

of the words employed, and reference must be made to all the provisions of the

agreement."  *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748,

750 (Colo. 1978) (en banc); *Martinez v. Am. Family Mut. Ins. Co.*, 413 P.3d 201, 203

(Colo. App. 2017) (recognizing that courts "read the provisions of the policy as a whole,

construing the policy so that all provisions are harmonious and none is rendered

meaningless").  Courts should avoid "strained constructions" in favor of "common

constructions," and technical and legal definitions should also be avoided.  *Dish*

*Network Corp. v. Arch Specialty Ins. Co.*, 989 F. Supp. 2d 1137, 1144 (D. Colo. 2013),

*aff'd sub nom. Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856 (10th Cir.

2014).  "In other words, the plain meaning of the words should be employed in a lay

manner consistent with what would be understood by a person of ordinary intelligence."

*Id*.; *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 377 (Colo. 2000) (recognizing

that "[t]he mere fact that the parties may have different opinions regarding the

8

interpretation of the contract does not itself create ambiguity in the contract").

Moreover, in insurance coverage disputes, "the insurer has the burden of proving that the facts fall within the policy's exclusions." *Rivelli v. Twin City Fire Ins. Co.*, 359 F. App'x 1, 4 (10th Cir. 2009); *RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp. 2d 1013, 1020 (D. Colo. 2011) ("When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract.").

**B.    Whether Plaintiffs Are Entitled to Coverage for Soft Costs**

Plaintiffs claim they are entitled to coverage for their Soft Costs under the Policy. They interpret the Coverage Extension for Soft Costs, a coverage-granting provision which they contend must be liberally construed in their favor, as granting coverage to *all* insureds.  (ECF No. 50 at 8.)  Further, they argue that under their definition of "financial interest,"[3] their Soft Costs qualify as a "financial interest in the Covered Property," entitling them to coverage for their Soft Costs under the Policy.  (ECF No. 38 at 16.)

Alternatively, Plaintiffs argue that if an ANI does not have a "financial interest in Covered Property" as they define it, then that phrase is ambiguous as to its application as a limitation on an ANI's right to claim that its Soft Costs losses are covered by the Policy.  (*Id.* at 16–18.)  They point to the fact that there is no language in the Coverage

---

[3] Given that the Policy does not define the phrase "financial interest," Plaintiffs engage in a lengthy analysis of the phrase's purported definition.  (ECF No. 38 at 7, 14–15.)  Ultimately, they conclude that "the plain meaning of *financial interest* is: an interest involving money or its equivalent; an interest in the nature of an investment; the capital contribution by the owners plus any retained earnings; a monetary stake or claim in the property or a monetary responsibility for the property; or, a relationship to property that has a monetary impact on the insured."  (*Id.* at 15–16.)

Extension for Soft Costs specifically excluding ANIs from coverage, and that "[g]enerally, a Policy gives additional named insureds the same coverage as named insureds." (*Id.* at 17 (citing *Sonoco Prods. Co. v. Travelers Indemn. Co.*, 315 F.2d 126, 128–29 (10th Cir. 1963)).)

Finally, they argue that the reasonable expectations doctrine entitles them to coverage for their Soft Costs. (*Id.* at 18–19.)

Defendant disputes Plaintiffs' arguments. (ECF No. 45.) For the following reasons, the Court agrees with Defendant.

First, the plain language of the Policy belies Plaintiffs' arguments. As an initial matter, for the purposes of the motions before the Court, the parties agree that Plaintiffs, as CCH's assignees, are ANIs under the Policy. (ECF No. 36 ¶ 5; ECF No. 38 at 6.) The Coverage Extension for Soft Costs states that "We will pay your 'Soft Costs' during the 'period of delay in completion.'" (ECF No. 36-1 at 23–24.) Further, the Policy states that "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations." (*Id.* at 22.) Accordingly, the Coverage Extension, specifically employing the defined term "your," applies solely to the Named Insureds listed in the Declarations.

The parties could have written the Policy so that the Coverage Extension applied to both Named Insureds and ANIs, but they did not. The Court must enforce the contract before it, not the contract Plaintiffs wish they had signed. Thus, the Coverage Extension does not entitle Plaintiffs to coverage for their Soft Costs.

Additionally, despite Plaintiffs' numerous arguments to the contrary, Section E.1—the provision describing the Additional Conditions that apply to ANIs—does not

10

provide Plaintiffs with a basis to obtain Soft Costs coverage.  That provision limits ANIs' coverage "only to the extent of their financial interest in the Covered Property."  (*Id.* at 33.)  As explained above, the Policy defines Covered Property to mean Permanent Works or Temporary Works (which are further defined).  (*Id.* at 22.)  As also explained above, Soft Costs have a distinct definition.  (*Id.* at 40.)

The fact that the Policy separately and explicitly provides a Coverage Extension for Soft Costs reinforces the notion that—despite Plaintiffs' contention that their Soft Costs are encompassed by their financial interest in the Covered Property (ECF No. 38 at 16)—the two types of coverage are distinct.[4]  Were the Court to apply Plaintiffs' construction of the Policy, it would render the distinction between coverage for Covered Property and Soft Costs meaningless—a result to be avoided under Colorado law.  *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009) ("We choose a construction of the contract that harmonizes provisions instead of rendering them

---

[4] Section B explains the Policy's "Exclusions," and Section B.2 provides:

**2.**     We will not pay for loss or damage caused by or resulting from any of the following:

**a.**     **Consequential Loss**

**(1)** Delay, loss of use or loss of market; or

**(2)** Loss of income, soft costs or extra expenses except as specifically provided in this Coverage Part.

(ECF No. 36-1 at 31.)  Thus, the Policy expressly excludes consequential losses other than those provided for by the Soft Costs Coverage Extension.  If consequential losses and Soft Costs were included within the definition of Covered Property, then the exclusion addressing consequential losses and the Coverage Extension and sublimit for Soft Costs would be unnecessary.

superfluous.").  There simply would be no need for a Coverage Extension for Soft Costs

if such costs already fell within the provisions of coverage for Covered Property.

Indeed, Defendant does not dispute that Plaintiffs have a financial interest or an

insurable interest in the Covered Property.  (ECF No. 45 at 8.)  But that financial

interest, without more, does not contractually create coverage under the Policy for

Plaintiffs' Soft Costs.

        In addition, the fact that Defendant paid FCI, a Named Insured, for direct

physical loss or damage to the Covered Property *and* for its Soft Costs further bolsters

the idea that the types of coverage are different.  As owners, Plaintiffs' financial interest

in the Covered Property was protected by Defendant's payment to FCI; Defendant

apparently did not contest that FCI was entitled to its Soft Costs as a Named Insured.

However, Defendant now contests Plaintiffs' right to Soft Costs, as their claim for Soft

Costs is broader than the rights ANIs have under the Policy.

        Next, to the extent Plaintiffs argue the phrase "financial interest in Covered

Property" is ambiguous (ECF No. 38 at 16–18; ECF No. 46 at 18), their argument is

unavailing and appears to be an effort to create ambiguity where none exists.[5]  *See*

---

        [5] Plaintiffs also argue the definition of "you" and "your" as applied by Defendant is
ambiguous, and applying Defendant's definition of those terms to the other parts of the Policy
would lead to absurd results.  (ECF No. 46 at 19–21.)  For support, they cite *Marathon Ashland
Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1241–42 & n.6 (10th Cir. 2001) for the
proposition that "Reading the Policy as excluding additional insureds everywhere the word 'you'
is employed would make the policy's coverage amorphous, leaving additional insureds open to
all sorts of unanticipated exclusions."  (ECF No. 46 at 19.)  Instead, Plaintiffs argue that "A
policy could clearly say additional insureds do not qualify as named insureds."  (*Id.*)
        In its reply, Defendant argues that Plaintiffs' interpretation ignores the distinction
between Named Insureds and ANIs.  (ECF No. 49 at 8–9.)  As ANIs, Plaintiffs obtained limited
coverage to protect their financial interest in the Covered Property.  They did not, however,
obtain the additional Coverage Extensions offered to Named Insureds like FCI.
        The Court agrees with Defendant.  ANIs may have different rights under an insurance

*Dish Network*, 989 F. Supp. 2d at 1143 ("Mere disagreement between the parties about the meaning of a term, however, does not create ambiguity. *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247, 251 (Colo. 1983). One may not read an ambiguity into a term where none exists in order then to resolve the resulting ambiguity against the insurer."). For the reasons explained above, the phrases "Covered Property" and "Soft Costs" are defined in the Policy and, as such, work together to exclude Plaintiffs' claim from the scope of the Policy's coverage for ANIs.

To the extent Plaintiffs alternatively argue that the use of the phrase "financial interest in Covered Property" elsewhere in the Policy supports coverage of their interpretation, this argument is also unavailing. Plaintiffs contest Defendant's argument that Section E.1 gives notice that the coverage provided to ANIs is not the same as that provided to Named Insureds. (ECF No. 46 at 13.) Rather, Plaintiffs argue Defendant "cannot be correct because [Defendant] uses the exact same verbiage to 'limit' claims by *any* insureds, including Named Insured's (limiting coverage to an insureds' 'financial interest in the Covered Property')." (*Id.* (emphasis in original) (citing ECF No. 36-1 at 19 - Inland Marine Conditions - Loss Payment; *id.* at 36 - Construction Pak - Builders' Risk Coverage Form - Additional Conditions - Loss Payment; and *id.* at 38 - Construction

---

policy than Named Insureds. Here, unlike in *Marathon*, the Policy defines "you" and "your" and limits their application to those entities listed in the Declarations, which do not include Plaintiffs. *See Associated Elec. & Gas Ins. Servs. Ltd. v. Am. Int'l Grp., Inc.*, 166 F. Supp. 3d 1248, 1254 (D. Utah 2015) (distinguishing policy that defined "you" from *Marathon*, which "determined that the policy did not clearly define the term 'you'").

Pak - Builders' Risk Coverage Form - Additional Conditions - Transfer of Rights of Recovery Against Others to Us).)  Plaintiffs argue that when the Policy is read as a whole, Defendant's use of the phrase "financial interest in Covered Property" does not support its argument that ANIs cannot avail themselves of the $1 million in Soft Costs coverage included in the Policy.  (*Id.* at 13–14.)

However, as Defendant explains, the limiting language in the definition of ANIs is not the term "financial interest in Covered Property."  (ECF No. 49 at 4.)  Instead, it is the prefatory language that provides that certain parties "are included as [ANIs] . . . *but only* to the extent of their financial interest in the Covered Property."  (ECF No. 36-1 at 33 (emphasis added).)  The other references in the Policy to "financial interest in Covered Property" do not have the same prefatory language, nor do they address Soft Costs.[6]  The Policy separately addresses Soft Costs in the Coverage Extension.  (*Id.* at 23–24.)  Thus, given the lack of prefatory language in other parts of the Policy, the use of the phrase "financial interest in Covered Property" is distinguishable in Section E.1 from its other uses in other parts of the Policy, rendering Plaintiffs' argument unsuccessful.

Finally, Plaintiffs argue the reasonable expectations doctrine provides grounds for coverage because the Policy has no exclusionary language advising ANIs they are not covered for Soft Costs, and the Policy fails to give ANIs notice that they are not

---

[6] For example, the Loss Payment provision provides that "We will not pay you more than your financial interest in the Covered Property."  (ECF No. 36-1 at 19.)  The language thus provides that Defendant would only pay a party for its financial interest in the Covered Property. It is silent as to Soft Costs.  Coverage for Soft Costs would have to come from another provision in the contract.

entitled to Soft Costs coverage.  The Colorado Supreme Court has summarized the

reasonable expectations doctrine as follows:

> Given insurance policies' unique nature, which includes
> significant potential for insurers to take advantage of or
> mislead insureds, such policies are subject to heightened
> scrutiny, including the doctrine of reasonable expectations,
> which obligates insurers to clearly and adequately convey
> coverage-limiting provisions to insureds.  In Colorado, the
> reasonable expectations of insureds have succeeded over
> exclusionary policy language in two main situations:
> (1) where an ordinary, objectively reasonable person would,
> based on the language of the policy, fail to understand that
> he or she is not entitled to the coverage at issue; and
> (2) where, because of circumstances attributable to an
> insurer, an ordinary, objectively reasonable person would be
> deceived into believing that he or she is entitled to coverage,
> while the insurer would maintain otherwise.

*Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1048–49 (Colo. 2011).

Contrary to Plaintiffs' contention, neither of these situations is present here.[7]

The Policy provisions analyzed above provide notice that ANIs are entitled to different

coverage than Named Insureds.  Plaintiffs' argument fails to acknowledge the limiting

language in Section E.1, which provides that ANIs have coverage "only to the extent of

their financial interest in the Covered Property."  (ECF No. 36-1 at 33.)  Based on this

language, the Court cannot conclude that an ordinary, reasonable person would fail to

understand he or she is not entitled to Soft Costs coverage under the Policy.  Thus,

Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

---

[7] Although Plaintiffs cite both parts of the reasonable expectations doctrine, they only ever invoke the first part, as they do not contend Defendant deceived them into believing they were entitled to coverage.  (*See* ECF No. 38 at 18.)  The Court therefore limits its analysis to the first part of the doctrine.

C.    **Remaining Claims**

Defendant is also entitled to summary judgment in its favor on Plaintiffs' statutory

delay/denial and common law bad faith claims.  Generally, this Court has held that

where a party's breach of insurance contract claim fails, the corresponding (and

derivative) statutory and common law bad faith breach of insurance contract claims fail

as well.[8]  *See Johnson v. Am. Nat'l Prop. & Cas. Cos.*, 2019 WL 463026, at *5 (D. Colo.

Feb. 6, 2019).

Here, the Court has determined that as ANIs, Plaintiffs' Soft Costs are not

covered under the Policy.  As a result, Plaintiffs cannot demonstrate that Defendant

breached the insurance contract, much less that it did so in bad faith.[9]

---

[8] The Court notes that in Defendant's Motion for Summary Judgment, which is not yet ripe for review, Defendant states: "To the extent that this Court grants Travelers' Early Motion for Partial Summary Judgment regarding the absence of coverage under the Policy, summary judgment on the remaining claims against Travelers is appropriate as there can be no claim for bad faith in the absence of coverage."  (ECF No. 63 at 2.)

[9] In Plaintiffs' Motion, they state that "Plaintiffs, as CCH's assignees, are ANIs under the Policy."  (ECF No. 38 at 6.)  In a footnote to that statement, Plaintiffs state: "The parties stipulated to this and MSMF ¶¶ 1–9, below, solely for the purposes of their Early MSJs. Plaintiffs reserve their right to claim they are 'insureds' under the Policy even if they're not ANIs under the Policy.  The Parties' dispute over whether Plaintiffs are insureds (as ANIs or otherwise) under the Policy will not be resolved in these cross-motions.  (Doc. 36, ¶ 4.)."  (*Id.* at 6 n.1.)

In a footnote in Plaintiffs' response to Defendant's Motion, Plaintiffs state: "As Travelers [*sic*] indicates in footnote 1 of its Early PMSJ, if Additional Named Insureds cannot recover Soft Costs, Plaintiffs intend to argue they had coverage as Named Insureds or were otherwise insured under the policy."  (ECF No. 46 at 8 n.1.)

As such, Plaintiffs purport to reserve the right to assert an argument they should have asserted here but did not.  That tactical decision appears to be predicated on a misapprehension of the Court's applicable Revised Practice Standard.  Nothing in that Practice Standard precludes the Court from disposing of all claims and issues on an Early Motion for Partial Summary Judgment, if the facts and law permit it to do so.  Plaintiffs were clearly on notice that their status as insureds under the Policy, *vel non,* was the key, central legal issue joined in the Cross Motions.  As such, Plaintiffs should have asserted and developed *all* of their arguments bearing on this dispositive dispute in the course of briefing the Cross Motions.  The responsibility for purporting to hold other, non-developed arguments, in reserve for a later date

# IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant Travelers Property Casualty Company of America's Early Motion for Partial Summary Judgment (ECF No. 37) is GRANTED;

2.     Plaintiffs Downtown Lofts LIHTC LLLP and Downtown Lofts PAB LLLP's Early Motion for Partial Summary Judgment (ECF No. 38) is DENIED;

3.     All of Plaintiffs' claims are dismissed with prejudice;

4.     Judgment shall enter in favor of Defendant and against Plaintiffs, and Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and

5.     The Clerk shall terminate this action.


Dated this 31st day of December, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge

---

is to be borne solely by Plaintiffs.   Accordingly, the Court declines to permit further briefing and will dismiss this action in its entirety.